No. 24,883.

The Farmers State Bank, *Appellee*, v. H. A. Reed, *Appellant*.

SYLLABUS BY THE COURT.

1. INSOLVENT BANK—*Fund Collected From Stockholders A Trust Fund for Benefit of All Creditors.* The fund collected by a receiver of an insolvent bank from the stockholders under their statutory liability is a reserve or trust fund for the benefit of all the creditors of the insolvent bank.

2. SAME—*Stockholder May Not Offset His Statutory Liability by Claim as Creditor.* A stockholder in an insolvent bank can not offset his statutory liability by a creditor's claim against the bank.

Appeal from Franklin district court; HUGH MEANS, judge. Opinion filed July 7, 1923. Affirmed.

*Wilbur S. Jenks,* of Ottawa, for the appellant.

*A. B. Crum,* of Lyndon, and *A. M. Casten,* of Quenemo, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was instituted by the receiver of the plaintiff, an insolvent bank, to recover from the defendant his statutory liability as a stockholder. The defendant was also a director of the bank and had been for several years before it failed, and together with other directors and officers of the bank, had executed several written guarantees to other banks whereby he guaranteed for the bank the payment of certain notes. After the failure the defendant paid certain sums of money because of the guarantees. He was the owner of 23 shares of the stock in the bank of the par value of $2,300. He sought to offset the payments he had made for the bank against his liability as a stockholder. Judgment was for plaintiff, and defendant appeals.

The defendant ably argues that he is entitled to the statutory right of set-off.

Section 6994, of the General Statutes of 1915, provides:

"When cross demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim or set-off could have been set up, neither can be deprived of the benefit thereof by the assignment or death of the other or by reason of the statute of limitations; but the two demands must be deemed compensated so far as they equal each other."

Section 6989, among other things provides:

"The defendant may set forth in his answer as many grounds of defense,

counterclaim, set-off and for relief as he may have, whether they be such as have been heretofore denominated legal or equitable or both." (subdiv. 3.)

Defendant argues that these sections of the statute are not limited; that they are not to be applicable in one kind of a case and denied application in another; that in this case the demands as between him and the bank were mutual; that if the stockholder may exercise the right of set-off against a creditor where there is a lack of mutuality, by far greater reason should he have that right against the bank itself or a so-called receiver bringing an action in the name of the bank. He cites various authorities to sustain his contention. We do not believe, however, that the statutes and authorities cited and relied on by the defendant are applicable here. The Kansas cases cited by him were decided prior to the enactment of the banking law of 1897, when the practice was common for the individual creditor to sue the individual stockholder on his statutory liability, and do not now apply.

Section 547 of the General Statutes of 1915 provides that,

"If, upon examination by the state bank commissioner . . . it shall appear that any bank is insolvent . . . it shall be the duty of the bank commissioner to immediately take charge of such bank and all property and effects thereof. The bank commissioner may appoint a special deputy bank commissioner to take charge of the affairs of an insolvent bank temporarily until a receiver is appointed . . . provided that in no case shall any bank continue in charge of such special deputy for a longer period than six months. Upon taking charge of any bank the bank commissioner shall as soon as possible ascertain, by a thorough examination into its affairs, its actual condition; and whenever he shall become satisfied that such bank cannot resume business or liquidate its indebtedness to the satisfaction of all its creditors, he shall forthwith appoint a receiver."

Section 573 of the General Statutes of 1915 is as follows:

"At any time after the closing of any incorporated bank [if] it shall appear to the receiver thereof that the assets of such bank are insufficient to pay its liabilities, it shall be the duty of such receiver to immediately institute proper proceedings, in the name of the bank, for the collection of the liability of the stockholders of such bank; all sums so collected to become a part of the assets of such bank and to be distributed pro rata to the creditors thereof in the same manner as other funds: *Provided,* That all transfers of property by a stockholder after the closing of any such bank and before the payment of the double liability as provided by this act, shall be absolutely void as against said double liability. No action by any creditor against any stockholder of such bank for the recovery of such liability shall be maintained unless it shall appear to the satisfaction of the court that the receiver has failed to commence action as herein provided."

It will be noted that the statute provides that all sums so collected from the stockholders shall become a part of the assets of the bank and be distributed pro rata to the creditors in the same manner as other funds. The weight of authority, supported by sound reasoning, is that they become a reserve or trust fund created for the benefit of all the creditors.

In *Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331, in reference to the statutes of 1897, this language was used:

"It will be observed that this statute created a liability not directly to the creditors *eo nomine,* but to a trust fund for their benefit, and it was therefore held that this fund, like all other trust funds, was to be administered in equity. . . . Prior to the enactment of 1897, before referred to, we had no statute declaring or implying a trust in the statutory liability of the stockholders of corporations." (p. 580.)

To permit a stockholder to offset a claim which he has against the bank against his statutory liability would have the effect of making him a preferred creditor.

In 3 R. C. L. 398, it is said:

"Where the capital of a banking corporation has become impaired, and an assessment against the stockholders is ordered under a statute to enable the bank to continue business, the payment of such assessment, and the resumption of business by the bank do not in any manner affect or discharge the stockholders from their general statutory or constitutional liability for the debts of the bank upon its subsequent insolvency. The latter liability is designed solely for the benefit of creditors, and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full. . . . It amounts for all practical purposes to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation."

In 7 C. J. 517 it is said:

"A stockholder who is sued by, or on behalf of creditors to enforce his statutory liability for the debts of the bank, cannot escape, or reduce his liability by asserting any claim which he may have against the bank."

In Michie on Banks and Banking, it is said:

"A stockholder who is also a creditor of an insolvent bank cannot set off its debt to him against his statutory liability for its debts, since his liability is to the creditors, and for the further reason that such set-off would result in a preference." (p. 223, § 49.)

In *Duke v. Force* (Wash.), 208 Pac. 67, 23 A. L. R. 1354, it was said:

"Claims against an insolvent bank cannot be set off against superadded stockholders' liability." (Syl.)

State Bank v. Reed.

In the opinion is found the following language:

"To the point that claims against an insolvent bank cannot be set off against superadded liability may be cited a great number of cases the reason for the decisions of which is that the two claims are not in the same right— one of them being in favor of creditors against the stockholders, and the other in favor of the stockholders against the bank; and further, that the adoption of any other rule would result in a preference of the stockholders over the other creditors." (p. 74; see, also, note and citations in 23 A. L. R. 1367 *et seq.*)

In 5 Cyc. 454, it is said:

"A stockholder cannot have his claim against the bank set off against his liability."

In *Barth v. Pock*, 51 Mont. 418, 155 Pac. 282, it was said in the headnote:

"A stockholder of a bank which failed must discharge the double liability imposed by law, and may then present valid claims against the bank for allowance and payment as other creditors; but *his claim against the bank* cannot be set off against his liability as a stockholder."

In *Northwestern Trust Co. v. Bradbury*, 117 Minn. 83, it was said:

"The constitutional liability of stockholders in banking corporations was designed solely for the benefit of creditors and constitutes a fund available only when the bank is insolvent and unable to meet its obligations in full. . . It amounts for all practical purposes to a reserve or trust fund, to be resorted to only in proceedings in liquidation, when necessary to meet the payment of obligations of the corporation." (p. 88; see, also, *Williams v. Rose,* 218 Fed. 898; *Conway v. Owensboro Savings Bank,* 165 Fed. 822; *Scoville v. Thayer,* 105 U. S. 143, 26 Law Ed. 968; *Blackert v. Lankford* [Okla.], 176 Pac. 532.)

The judgment is affirmed.