No. 23,739.

THE KANSAS STATE BANK, *Appellant*, v. A. W. LAUGHLIN, *Appellee*.

SYLLABUS BY THE COURT.

BANKING ACT—*Statute Imposing "Double Liability" upon Stockholders Repealed by Constitutional Amendment.* The section of the banking act (Gen. Stat. 1915, § 523) providing that stockholders of a bank shall be additionally liable for a sum equal to the par value of the stock owned by each was repealed by the amendment to section 2, article 12, of the constitution adopted in 1906, which provides that:

"Dues from corporations shall be secured by the individual liability of the stockholders to the amount of stock owned by each stockholder, and such other means as shall be provided by law," etc.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed February 11, 1922. Affirmed.

*John L. Hunt,* of Topeka, and *B. I. Litowich,* of Salina, for the appellant.

*Frank T. Knittle, Ralph T. Knittle,* and *Thomas L. Bond,* all of Salina, for the appellee.

*Z. C. Millikin,* of Salina, as *amicus curiæ.*

The opinion of the court was delivered by

JOHNSTON, C. J.: The question presented for determination on this appeal is whether the statute enacted in 1897 (Gen. Stat. 1915, § 523) providing that shareholders in a banking corporation shall be subject to an additional liability equal to the par value of the stock owned by them is still existent and enforceable.

The question arose in an action brought against a stockholder to recover a statutory liability on stock owned by him in the Kansas State Bank of Salina, which had become insolvent. The trial court held that the stockholder's double liability had been abrogated by a constitutional amendment and that the statute mentioned was no longer in force. When it was enacted the constitutional provision relating to the individual liability of stockholders was as follows:

"Dues from corporations shall be secured by individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liabilities shall not apply to railroad corporations, nor corporations for religious or charitable purposes." (Gen. Stat. 1915, § 237, note.)

It had been determined that this provision was not self-executing but required legislative action to give it effect. (*Woodworth v. Bowles,* 61 Kan. 569, 60 Pac. 331.) An early legislature enacted statutes for the enforcement of the liability as against the stockholders of all corporations except railway, religious and charitable corporations. (Gen. Stat. 1868, ch. 23, §§ 32, 44.) A slight amendment of these provisions was made in 1898 permitting receivers of corporations to enforce the statutory liability against stockholders. (Laws 1898, ch. 10, §§ 14, 15.) These provisions applied to banking corporations as well as all other business corporations and remained in force until 1903 when the legislature repealed and abrogated the remedies for the enforcement of the liability, making an exception in these words:

"Nothing in this act shall be construed so as in any manner to affect the liability of stockholders in any banking corporation, organized under the laws of this state as now provided by law." (Laws 1903, ch. 152.)

About five years before that time the legislature, in enacting an

elaborate act for the regulation of banks, included the section already mentioned, which provides that—

"The shareholders of every bank organized under this act shall be additionally liable for a sum equal to the par value of stock owned, and no more." (Gen. Stat. 1915, § 523.)

This provision was cumulative in character and reiterated the individual liability ordained in the constitution and provided for from the beginning in the corporation act, but prescribes different remedies for its enforcement. Following these steps the people in 1906 adopted an amendment to the constitutional provision relating to stockholders' liability, which is as follows:

"Dues from corporations shall be secured by the individual liability of the stockholders to the amount of stock owned by each stockholder, and such other means as shall be provided by law; but such individual liability shall not apply to railroad corporations nor corporations for religious or charitable purposes." (Const., Art. 12, § 2.)

The parties are divided as to the meaning and scope of the amendment. In behalf of the plaintiff it is said that the provision relating to the individual liability of a stockholder is not a grant of power; that the legislature was already vested with legislative power not prohibited by the national or state constitutions; that the provision was merely a limitation on the power of the legislature; and that the limitations expressed extended no further than to fix a minimum of liability.

It is contended that the amendment prescribing a liability "to the amount of stock owned by each stockholder, and such other means as shall be provided by law," restricted the legislature from imposing a liability less than the amount of the stock owned by the stockholder, but did not prevent the legislature in the exercise of its general grant of power from imposing a double or greater liability, if it saw fit to do so. We cannot assent to this interpretation of the amendment. The manifest purpose of the people in adopting the amendment was to fix the individual liability of stockholders for the dues or obligations of corporations. The original provision fixed a certain definite liability; that is, the amount due on the stock and an additional amount equal to the stock owned by each stockholder. The declaration that this should be the liability was a command as well as a limitation on the power of the legislature. As the provision was not self-executing, legislation was necessary to give it effect. The duty to make provision

36—110 Kan.

for enforcing the liability was commanded and the failure to observe the command did not annul the liability. The history of the times shows there was marked opposition to the double liability because it tended to prevent capitalists from investing in corporate enterprises in the state and to drive capital to other states, where the added liability was not imposed upon stockholders. Because of this condition and of the well-known hostility to the double liability, the legislature of 1903 repealed the statutory provisions for enforcing that liability, making an exception as to banking corporations. Provisions for making the liability effective as to banks were continued in force. Then we had the constitutional provision fixing a definite liability without any means of enforcing it. To correct this inconsistency and get rid of the inimical liability, the legislature of 1905 submitted a proposition to the electors of the state, striking out the double liability, and at the election of 1906 the amendment which has been quoted was adopted.

It is competent for the court to give attention to the history of the times and to consider the language of the amendment in connection with the well-known conditions which led to its submission and adoption. This rule has been applied in the interpretation of statutes and it is equally applicable in ascertaining the object and purpose of the adoption of constitutional provisions. (*The State v. Kelly,* 71 Kan. 811, 81 Pac. 450; 12 C. J. 710.) As to the interpretation of a constitutional amendment it has been said by the supreme court of the United States:

"The safe way is to read its language in connection with the known condition of affairs out of which the occasion for its adoption may have arisen, and then to construe it, if there be therein any doubtful expressions, in a way so far as is reasonably possible, to forward the known purpose or object for which the amendment was adopted." (*Maxwell v. Dow,* 176 U. S. 581, 602.)

Considering the amendment in the light of the known conditions that existed in Kansas when it was adopted, the desire of the people to get rid of a constitutional provision deemed to be a handicap to the development of the state, and the history of the change in the constitution, there can be little doubt that the purpose or object of the people was the abrogation of the double liability of stockholders. Their purpose was to strike out the added liability and substitute for it the definite liability fixed at the amount of the stock owned by each stockholder. The measure prescribed cannot be regarded as a fluctuating one, ranging from a minimum liability to any measure of liability that the legislature might see fit to

enact, but it was a definite and determined liability which limited the power of the legislature and it can impose no greater or different liability than is fixed in the constitution itself. In a Nebraska case, where there is a constitutional provision quite similar to our own, it was decided:

"The present constitution not only determines what the liability of a stockholder in a corporation, for the corporate debts thereof, shall be, but it limits this liability, and it is not within the power of the legislature to extend it." (*Van Pelt v. Gardner,* 54 Neb. 701, syl. ¶ 6.)

(See, also, *McGowan v. McDonald,* 111 Cal. 57; *Western Pac. Ry. Co. v. Godfrey,* 166 Cal. 346; *Way v. Barney,* 116 Minn. 285; 6 Fletcher Cyclopedia Corporations, § 4142.)

That the liability was fixed and certain was recognized by the supreme court of the United States in the interpretation of the earlier provision of the constitution. In *Whitman v. Oxford National Bank,* 176 U. S. 559, 562, Mr. Justice Brewer said:

"By section 1 of Article 12, of the constitution of Kansas a certain definite liability is cast upon each stockholder in other than railway, religious and charitable corporations."

Further along in the opinion, in speaking of the nature and measure of the liability, he remarked:

"The words, 'shall be secured,' are not merely directory to the legislature to make provision for such liability, but of themselves declare it." (p. 562.)

The liability prescribed in the amendment is equally certain and definite as in the original and it applies to the stockholders in all corporations other than railway, religious and charitable corporations, which are expressly excepted from the provision. That the amendment operated to repeal the double liability was the generally accepted view of its effect. In *Bicknell v. Altman,* 81 Kan. 436, it was said:

"The present constitution limits the liability of stockholders for the debts of a corporation to the amount of their stock." (p. 437.)

In a later case the subject was brought to the attention of the court, and it was held:

"In 1903 all provisions for the enforcement of stockholders' liability were repealed, and at the general election of 1906, section 2, of article 12 of the constitution was amended, abrogating the double liability of stockholders, and leaving each stockholder liable only to the amount of stock owned by him." (*Douglass v. Loftus, Adm'x,* 85 Kan. 720, 723, 119 Pac. 74.)

The clause "and such other means as shall be provided by law"

does not extend or affect the individual liability definitely prescribed. It refers to means for securing the debts of corporations other than the individual liability of stockholders. Counsel for plaintiff says he can conceive of no means of giving a creditor additional protection except by providing additional liability against stockholders. As has been suggested, the legislature might provide that the corporation should not engage in business until a certain amount of the capital stock had been subscribed and paid for, or that the corporation should set aside a portion of its earnings from time to time, thereby creating a fund to be held as security for the payment of its debts, or it might be required before beginning business to make and file a bond as a security to creditors; or, why might not a scheme be devised somewhat similar to the bank guaranty act by which creditors of corporations would be secured in some such way as bank deposits are now secured? Still other means of securing creditors might be to provide special remedies for the enforcement of the individual liability of stockholders fixed by the amendment, and other remedies by which the assets of the corporation might be promptly reached and appropriated for the payment of the debts of the corporation. In any event, the other means spoken of cannot refer to the same means already specified. It is some means other than the individual liability of stockholders. As already stated, the amendment covers all corporations, other than those expressly excepted, and applies to banking corporations equally with other business corporations. It not only abrogated the original constitutional provision which it superseded but it repealed existing statutes which are inconsistent with or repugnant to its provisions. The abrogation of the double liability effectually annulled the statute providing that the stockholders in banks should be subject to a double liability on the stock owned by them.

It follows that the judgment of the district court must be affirmed.

BURCH, MASON, DAWSON, JJ., dissenting.